People of Porto Rico, Plaintiff and Appellee, v. A. Quintana Reyes, Defendant and Appellant.

No. 3536.    Argued December 14, 1928.—Decided February 20, 1929.

*R. Martínez Nadal* and *M. A. Martínez Dávila* for the appellant. *José E. Figueras* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

A. Quintana Reyes was charged with the offense of libel by Pedro G. Quiñones before the municipal court of San Juan. The case was disposed of there and appealed to the district court where the defendant was tried and convicted. He then appealed to this court and has assigned in his brief two errors, one committed in his opinion by the district court in admitting in evidence the original of the libelous article and the other in holding that the facts alleged in the complaint and those shown by the evidence constituted the offense.

In arguing the first the appellant contends that the court erred in admitting in evidence the original of the libelous article signed by him because the only evidence connecting him with the publication of the article is the testimony of the district attorney referring to a conversation of a privileged nature which he had with the appellant.

It was shown by the evidence that Romanacce, director of the newspaper *J'Accuse,* delivered to its editor the original writing signed by A. Quintana Reyes. The district attorney testified as follows:

"My name is Marcelino Romaní and I am the district attorney for this judicial district. One day Quintana Reyes came to my office to speak to me in relation to this matter voluntarily, but a personal and private matter. Then he stated to me and admitted in a private conversation that he had caused the publication of that article in the newspaper *J'Accuse* for certain reasons which it is not opportune to mention here. He admitted to me that he had composed that article and had sent it to the *J'Accuse,* telling me that it was because of certain testimony given by Quiñones in a civil action between parties whose names I do not remember. That is all. Attorney. Q.— Nothing. District attorney.—I offer in evidence the newspaper and this original. Attorney.—We object because we understand that the signature of Quintana Reyes has not been identified. District attorney.—He admitted that he was the author of this and he had it published, and Gotay admitted that this is the original of the article. Judge.—The court admits it as the article which was published. Attorney.—Exception."

In our opinion the testimony of the district attorney was admissible.

In the first place, as sustained by the *Fiscal* of this court in his brief, if the defendant went to see the district attorney, not in his official capacity but as a friend, and made to him the statement referred to, we do not see that it was privileged, for there did not exist then the relation required in that sort of communication to make it privileged, and in the second place, if the defendant appeared before the district attorney by reason of the investigation that was being made by the

said official in connection with the acts committed by him, the statement made to him is in the nature of a voluntary admission and perfectly admissible in evidence.

In his work on Criminal Evidence Underhill says:

". . . . . But when an informal examination only has been had, or if the details of a regular and formal examination have not been committed to writing, or if the record is inadmissible because of a lack of jurisdiction, or irregularities apparent on its face, or for any other material or substantial reason, parol evidence of what the prisoner voluntarily said on the preliminary examination will be received. So a coroner may testify orally to what was said on a preliminary examination prior to the final inquest. So, too, parol evidence of an extra-judicial confession is never incompetent merely because the judicial examination of the prisoner was taken down in writing, or because the prisoner himself has committed a prior confession to writing. A prosecuting attorney who heard a confession may testify orally to it. His oral testimony is the best evidence, though the confession was taken down by a stenographer in his presence."

The appellant invokes the case of *Vogel* v. *Gruaz*, 110 U. S. 311. In that case the Supreme Court of the United States established the following doctrine:

"A communication made to a State's attorney, in Illinois, his duty being to 'commence and prosecute' all criminal prosecutions, by a person who inquires of the attorney whether the facts communicated make out a case of larceny for a criminal prosecution, is an absolutely privileged communication, and cannot, in a suit against such person to recover damages for speaking words charging larceny, be testified to by the State's attorney, even though there be evidence of the speaking of the same words to other persons than such attorney."

A mere reading of that doctrine is sufficient to show that it is not applicable. This is not a case of a consultation and of an action to recover money, but of voluntary admissions made by the defendant to the district attorney who was making the investigation.

Let us examine the second assignment.

The complaint reads as follows:.

"I, Pedro G. Quiñones, attorney and resident of San Juan, P. R.,

at No. 35 Sol St., 36 years of age, file this complaint against A. Quintana Reyes for libel (violation of section 243 of the Penal Code) committed as follows: That on or about March 12, 1927, in the city of San Juan, P. R., the defendant signed and sent to the newspaper *J'Accuse* published in San Juan an article under the heading 'The Conduct of a Bank Director—Subtleties of Usury' to be published in the said newspaper, as it was, having circulated publicly in this city, among other copies, that marked 5 (edition of March 12, 1927) of the said newspaper, which article contains the following paragraphs: 'Pedro G. Quiñones, notwithstanding the three titles appearing in his advertisements, by his lack of capacity to make a living in the professional field, has to resort to the unenviable business of usury. This individual has had the good luck to be appointed Manager of the Banco Masónico of San Juan and taking advantage of that position, dedicated himself to making usurious loans by using for that purpose the funds of that institution. How? As he is already known as doing that kind of business, anybody in need of a loan applies to him and if the signatures offered are acceptable he asks for the signed obligation and discounts it in the Banco Masónico and then collects from his victim in advance interest at three or five percent and sometimes higher, and without using a cent of his own money, makes loans at a fat profit. That is a good way to be director of a bank. We call the attention of the bank because we suspect that the bank is ignorant of the intrigues of that director and we think that when they are known to the other gentlemen composing the board of directors among whom there are honest persons, they will expel him, which is the least to be expected from them. In the next number we will give an account of another very dirty deed of that manager acting also for the bank or using its name.—A. Quintana Reyes.'

''That the paragraphs transcribed are signed by the defendant, who is the sole author thereof and who had them published with the malicious intention to defame complainant Pedro G. Quiñones, attorney at law and director of the Banco Masónico de Puerto Rico, by holding him up to public hatred and ridicule, the imputations made against him in that article being false.''

The appellant alleges that the complaint is insufficient because it does not conclude with an allegation that the acts are contrary to the statute for such cases provided and because it fails to state that the defendant wilfully published the said libel.

It should not be forgotten that this is a complaint and not an information. It would have been correct for the complaint to conclude in the form suggested by the appellant, which is the form prescribed by section 72 of the Code of Criminal Procedure, but what is really important is that the facts constitute an offense in accordance with the statute in force at the time of its commission. And so it is in fact, the name of the offense and the statute which punishes it being stated moreover in the beginning of the complaint.

The second assignment is without merit. The complaint was made according to section 243 of the Penal Code which reads as follows:

"Sec. 243. A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule."

This is not a case of the wilful publishing referred to in the next section of the Penal Code enacted to cover the case of the editors of newspapers, for example, where they need not have acted *maliciously,* it being sufficient that they acted *wilfully* in order to understand that the offense of libel in that other form is committed.

The evidence is sufficient. The defendant attempted to justify his act. In this connection the trial court expressed itself as follows:

"The defendant tried to prove the truth of his imputations, that is, that the complainant, being a lawyer and without the ability to make a living in his profession, had resorted to usury by taking advantage for that purpose of his office as director of the Banco Masónico of San Juan and making usurious loans with the funds of that institution, without taking a cent from his own pocket, with fat profits. But the truth of these imputations has not been shown, nor that the publication was made with a clean intent and for a justifiable purpose."

We have examined the evidence and agree with the conclusion of the district judge.

The judgment appealed from must be affirmed.